FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

26 JUL 15 PM 12: 58

# UNITED STATES DISTRICT COURT

# DISTRICT OF COLORADO

**1437 Bannock Street**

**Denver, Colorado 80202**

**(303) 606-2300**

DEZHON SANDOVAL,

CHANTAL JONES, and

JESSAMYN JONES,

Plaintiffs,

v.

CITY AND COUNTY OF DENVER;

DENVER SHERIFF DEPARTMENT;

DENVER HEALTH MEDICAL CENTER;

JOHN DOES 1–10,

Defendants.

Case No. **1:26-CV-00361-RTG**

# FIRST AMENDED COMPLAINT

**(42 U.S.C. § 1983)**

## I. INTRODUCTION

1. This civil rights action is brought pursuant to 42 U.S.C. § 1983 to redress alleged violations of the Fourteenth Amendment to the United States Constitution arising from the death of Jason Jones while he was in the custody of the Denver Sheriff Department at the Denver Detention Center in Denver, Colorado.

2. At all relevant times, Jason Jones was a pretrial detainee who was entirely dependent upon Defendants for his safety, supervision, medical care, and protection. Plaintiffs allege that Defendants failed to provide constitutionally adequate medical evaluation, monitoring, and treatment after Jason Jones exhibited signs of a serious medical emergency while in their custody.

3. Plaintiffs do not dispute the Medical Examiner's determination that Jason Jones's physiological cause of death was the toxic effects of methamphetamine with contributing medical conditions. Rather, Plaintiffs allege that Defendants failed to take objectively reasonable measures to recognize, evaluate, monitor, and respond to Jason Jones's serious medical condition while he remained alive and under Defendants' exclusive custody and control.

4. Plaintiffs further allege that significant information concerning Jason Jones's detention, medical care, emergency response, and death remains exclusively within Defendants' possession, including surveillance recordings, incident reports, housing records, medical records, welfare-check logs, communications, and the identities of correctional staff, medical personnel, and witnesses involved in the events preceding Jason Jones's death.

5. Plaintiffs further allege that despite Jason Jones having contacted Plaintiff Dezhon Sandoval from the detention facility before his scheduled court appearance, Plaintiffs were not notified of Jason Jones's death until approximately three weeks later. Plaintiffs further allege that repeated attempts to obtain information concerning Jason Jones's death, including communications directed to the detective reportedly assigned to the investigation, were unsuccessful because those communications were not returned.

6. Plaintiffs further allege that they have not been provided surveillance footage, the identity of Jason Jones's cellmate, or complete information concerning the events leading to Jason Jones's death despite their efforts to obtain such information.

7. Plaintiffs bring this First Amended Complaint in response to the Court's Order directing amendment and intend this pleading to provide a clear, concise, and organized statement of their claims in accordance with Rule 8 of the Federal Rules of Civil Procedure.

## II. NATURE OF THE ACTION

8. This action seeks relief under 42 U.S.C. § 1983 for alleged violations of rights secured by the Fourteenth Amendment to the United States Constitution.

9. Plaintiffs allege that Jason Jones, as a pretrial detainee, possessed a constitutional right to receive objectively reasonable medical care while incarcerated.

10. Plaintiffs allege that Defendants, acting under color of state law, failed to provide constitutionally adequate medical evaluation, observation, supervision, monitoring, emergency medical treatment, and other objectively reasonable measures after Jason Jones exhibited signs of a serious medical emergency.

11. Plaintiffs further allege that Defendants' acts and omissions deprived Jason Jones of rights secured by the United States Constitution and ultimately resulted in his death while in custody.

12. Plaintiffs further allege that discovery is expected to identify the individual correctional officers, deputies, supervisors, nurses, physicians, and other personnel responsible for the acts and omissions alleged in this Complaint.

13. Plaintiffs seek all relief authorized by law, including compensatory damages, recoverable costs, interest, and such additional relief as this Court deems just and proper.

## III. PARTIES

### Plaintiffs

14. Plaintiff Dezhon Sandoval is an adult resident of the State of Colorado and is the biological son of Jason Jones.

15. Plaintiff Chantal Jones is an adult resident of the State of Colorado and is a surviving family member of Jason Jones.

16. Plaintiff Jessamyn Jones is an adult resident of the State of Colorado and is a surviving family

member of Jason Jones.

**Defendants**

17. Defendant City and County of Denver is a municipal corporation organized under the laws of the State of Colorado and, at all relevant times, operated the Denver Detention Center through the Denver Sheriff Department.

18. Defendant Denver Sheriff Department was responsible for the custody, supervision, welfare, safety, and security of persons incarcerated at the Denver Detention Center, including Jason Jones.

19. Defendant Denver Health Medical Center was responsible for providing, coordinating, or supervising medical screening, evaluation, treatment, and emergency medical care for incarcerated individuals housed at the Denver Detention Center.

20. Plaintiffs presently do not know the identities of the individual correctional officers, deputies, supervisors, nurses, physicians, emergency responders, or other personnel who personally participated in the events giving rise to this action.

21. Those individuals are designated as John Does 1–10 until their identities become known through discovery.

22. At all relevant times, each Defendant acted under color of state law and within the course and scope of his, her, or its official duties.

## IV. REPRESENTATIVE CAPACITY AND STANDING

23. Plaintiffs bring this action in the capacities authorized by applicable federal and Colorado law.

24. Jason Jones died on or about September 19, 2024, while confined at the Denver Detention Center in Denver, Colorado.

25. Plaintiffs seek to assert those claims they are legally authorized to bring arising from Jason Jones's

death while in Defendants' custody.

26. Plaintiffs acknowledge that issues concerning representative capacity and standing may arise under applicable law. Plaintiffs do not represent that any Plaintiff has been appointed as the personal representative of Jason Jones's estate unless and until such an appointment occurs.

27. If the Court determines that any claim must be brought by a duly appointed personal representative of Jason Jones's estate, Plaintiffs respectfully request leave to amend this Complaint, substitute the proper party, or take any other action the Court deems appropriate to comply with applicable law and the Federal Rules of Civil Procedure.

28. Plaintiffs reserve the right to amend this Complaint as additional facts become known through discovery or if amendment becomes necessary to address representative capacity, standing, or any other procedural matter identified by the Court.

29. Plaintiffs incorporate by reference all preceding paragraphs.

## V. JURISDICTION AND VENUE

30. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

31. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) because Plaintiffs seek redress for the alleged deprivation of constitutional rights under color of state law.

32. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367, to the extent such claims are asserted.

33. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within the District of Colorado.

34. At all relevant times, Defendants conducted governmental and medical operations within the District of Colorado.

35. All acts and omissions alleged in this Complaint occurred within the District of Colorado.

36. Accordingly, jurisdiction and venue are proper in this Court.Absolutely. Here is Part 2 of your revised First Amended Complaint, including Sections VI–X with the updated factual allegations, explanation for allegations made upon information and belief, the chronology, the expanded "Failure to Notify Next of Kin and Post-Death Information" section, and the Medical Examiner findings.

## VI. FACTUAL ALLEGATIONS

37. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

38. Plaintiffs allege certain facts in this Complaint upon information and belief because many relevant facts, records, surveillance recordings, witness identities, communications, and other evidence remain exclusively within the possession, custody, or control of Defendants. Plaintiffs reasonably expect additional facts to become known through discovery.

39. Jason Jones was arrested and detained at the Denver Detention Center as a pretrial detainee.

40. As a pretrial detainee, Jason Jones was entirely dependent upon Defendants for housing, supervision, safety, medical care, emergency treatment, and protection.

41. Defendants owed Jason Jones a constitutional duty to provide objectively reasonable medical care and to respond appropriately to serious medical needs that were known or reasonably should have been known.

42. Upon information and belief, Jason Jones began exhibiting signs and symptoms of a serious medical condition while confined at the Denver Detention Center.

43. Upon information and belief, correctional officers, medical personnel, supervisors, or other employees observed, received reports concerning, or otherwise became aware of Jason Jones's deteriorating condition before he was found unresponsive.

44. Upon information and belief, another detainee informed correctional staff that Jason Jones had been lying on the floor for a period of time and requested that staff check on him. Plaintiffs allege that discovery will establish whether such reports were made, when they were made, who received them, and what actions were taken in response.

45. Plaintiffs allege that despite these circumstances, Defendants failed to provide timely medical evaluation, adequate monitoring, emergency intervention, or other objectively reasonable measures required under the circumstances.

46. Plaintiffs further allege that the complete sequence of events remains within Defendants' exclusive possession because relevant records, surveillance footage, communications, and reports have not yet been produced.

## VII. CHRONOLOGY OF EVENTS

47. Jason Jones was arrested and placed into the custody of the Denver Sheriff Department.

48. During his incarceration, Jason Jones remained dependent upon Defendants for all medical care and emergency assistance.

49. Upon information and belief, Jason Jones's physical condition deteriorated while he remained in custody.

50. Upon information and belief, correctional staff had opportunities to observe Jason Jones's condition before he was ultimately found unresponsive.

51. According to the Medical Examiner's report, Jason Jones was found unresponsive during a routine welfare check on September 19, 2024.

52. Correctional staff initiated emergency procedures after Jason Jones was discovered.

53. Emergency responders attempted resuscitative measures, including CPR and advanced lifesaving interventions.

54. Despite those efforts, Jason Jones was pronounced deceased.

55. Plaintiffs allege that the constitutional violations asserted in this Complaint occurred before Jason Jones was found unresponsive and concern Defendants' alleged failure to provide objectively reasonable medical care while he remained alive and in custody.

56. Plaintiffs allege that discovery will establish the complete timeline, including welfare checks, staff observations, communications, surveillance recordings, emergency responses, and the actions of each individual Defendant.

## VIII. FAILURE TO NOTIFY NEXT OF KIN AND POST-DEATH INFORMATION

57. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

58. Upon information and belief, Jason Jones contacted Plaintiff Dezhon Sandoval by telephone from the Denver Detention Center before his scheduled court appearance. Plaintiffs allege that Defendants therefore possessed, or reasonably should have possessed, contact information for Plaintiff Dezhon Sandoval or had the ability to identify and contact Jason Jones's next of kin through available records.

59. Plaintiffs allege that they were not notified of Jason Jones's death until approximately three weeks after his death.

60. Plaintiffs allege that the delay in notification delayed the family's ability to obtain timely information regarding Jason Jones's death and the circumstances surrounding it. Plaintiffs further allege that, because of the delayed notification, they were unable to promptly begin gathering information regarding the events leading to Jason Jones's death.

61. Plaintiffs further allege that after learning of Jason Jones's death, they made repeated efforts to

obtain information concerning the circumstances surrounding his death.

62. Upon information and belief, telephone calls directed to the detective reportedly assigned to investigate Jason Jones's death were not returned despite repeated attempts to obtain information.

63. Plaintiffs further allege that they requested information concerning the events leading to Jason Jones's death, including surveillance recordings, witness information, incident reports, the identity of Jason Jones's cellmate, and other records concerning his detention and death, but have not received complete information.

64. Plaintiffs further allege that, to the best of their knowledge, certain personal property belonging to Jason Jones, including property reportedly recovered at the time of his arrest, has not been returned to the family.

65. Plaintiffs allege that these circumstances have limited their ability to determine the complete sequence of events surrounding Jason Jones's death without formal discovery.

66. Plaintiffs are presently unaware of the reason for the approximately three-week delay in notifying Jason Jones's family of his death. Plaintiffs allege that discovery may reveal when Defendants first identified Jason Jones's next of kin, what efforts were undertaken to notify them, whether applicable notification policies or procedures were followed, whether any delays occurred, the reasons for any such delays, and the identities of the individuals responsible for those actions.

67. Plaintiffs further allege that many of the facts surrounding Jason Jones's detention, medical care, emergency response, death, notification of next of kin, and handling of his personal property remain exclusively within Defendants' possession, custody, or control. Plaintiffs therefore allege that formal discovery is necessary to obtain records, identify witnesses, determine the actions taken by individual Defendants, and fully understand the circumstances surrounding Jason Jones's death. Plaintiffs respectfully reserve the right to amend this Complaint, substitute parties, or supplement their factual allegations as additional evidence becomes available through discovery and as permitted by the Federal Rules of Civil Procedure.

68. Plaintiffs further allege that, despite their efforts to obtain Jason Jones's personal property following his death, they have not received all property they believe was in Defendants' possession or control, including property reportedly recovered at the time of his arrest. Plaintiffs allege that discovery may reveal what property was collected, inventoried, retained, released, or otherwise disposed of following Jason Jones's death, whether Defendants complied with applicable policies governing the handling and

release of a deceased detainee's personal property, and whether complete property records and inventories exist.

69. Plaintiffs further allege that discovery may reveal whether Defendants maintained records identifying Jason Jones's emergency contacts, next of kin, telephone contacts, or other family contact information while he was in custody; when such information became available to Defendants; whether those records were reviewed or utilized following Jason Jones's death; and whether Defendants complied with applicable policies, procedures, or customary practices concerning the identification and notification of a deceased detainee's next of kin.

## IX. MEDICAL EXAMINER FINDINGS

70. Following Jason Jones's death, the Office of the Medical Examiner performed an autopsy and prepared an official report.

71. The Medical Examiner determined that Jason Jones's cause of death was the toxic effects of methamphetamine, with hypertensive cardiovascular disease, obstructive sleep apnea, and morbid obesity listed as contributing conditions.

72. The Medical Examiner classified the manner of death as Accident.

73. The Medical Examiner documented that Jason Jones was found unresponsive during a routine welfare check while incarcerated at the Denver Detention Center.

74. The report further documents that emergency lifesaving measures, including CPR and advanced medical interventions, were attempted after Jason Jones was found.

75. The autopsy documented no significant recent traumatic injuries.

76. Plaintiffs do not dispute the Medical Examiner's findings concerning the physiological cause or manner of death.

77. Instead, Plaintiffs allege that Defendants violated Jason Jones's constitutional rights by failing to

provide objectively reasonable medical care before he was found unresponsive.

78. Plaintiffs further allege that the constitutional violations asserted herein concern Defendants' response to Jason Jones's serious medical condition while he remained alive and in custody.

## X. EVIDENCE WITHIN DEFENDANTS' POSSESSION

79. Plaintiffs have not yet had the opportunity to conduct formal discovery.

80. Many facts necessary to identify each Defendant's personal participation remain exclusively within Defendants' possession, custody, or control.

81. Upon information and belief, Defendants possess evidence including, but not limited to:

a. Surveillance recordings;

b. Welfare-check logs;

c. Housing records;

d. Booking records;

e. Intake screening records;

f. Incident reports;

g. Shift rosters;

h. Medical records;

i. Nursing notes;

j. Medication administration records;

k. EMS records;

l. Internal emails and radio communications;

m. Witness statements;

n. Policies, procedures, and training materials governing detainee medical care and emergency response;

o. Internal investigative records concerning Jason Jones's death.

82. Plaintiffs further allege that despite repeated efforts to obtain information, they have not been provided surveillance footage, the identity of Jason Jones's cellmate, or complete information regarding the circumstances surrounding his death.

83. Plaintiffs further allege that discovery will identify the correctional officers, medical personnel, supervisors, and other employees who personally participated in the events giving rise to this action.

84. Plaintiffs reserve the right to amend this Complaint as additional evidence becomes available through discovery.

## XI. EVIDENCE PRESERVATION

85. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

86. Plaintiffs allege that Defendants knew or reasonably should have known that evidence relating to Jason Jones's detention, medical care, emergency response, death, notification of next of kin, and handling of his personal property would be relevant to reasonably anticipated or pending litigation.

87. Upon information and belief, relevant evidence includes, but is not limited to:

a. Surveillance recordings;

b. Welfare-check logs;

c. Housing records;

d. Booking and intake records;

e. Medical screening records;

f. Medical and nursing records;

g. Medication administration records;

h. Incident reports;

i. EMS records;

j. Shift rosters and staffing records;

k. Internal emails, electronic communications, and radio traffic;

l. Witness statements;

m. Body-worn camera recordings, if any;

n. Policies, procedures, training materials, and supervisory records;

o. Internal investigations, mortality reviews, or other records concerning Jason Jones's death.

88. Plaintiffs respectfully request that all relevant evidence be preserved throughout the pendency of this action in accordance with applicable law.

## XII. FIRST CLAIM FOR RELIEF

**Violation of 42 U.S.C. § 1983**

**Fourteenth Amendment**

**(Against Individual John Doe Defendants)**

89. Plaintiffs incorporate by reference all preceding paragraphs.

90. Jason Jones was a pretrial detainee protected by the Due Process Clause of the Fourteenth Amendment.

91. The John Doe Defendants were correctional officers, deputies, supervisors, medical personnel, or other employees acting under color of state law who were responsible for Jason Jones's custody, supervision, welfare, medical care, or emergency response.

92. Plaintiffs allege that one or more John Doe Defendants knew, or objectively should have known, that Jason Jones exhibited signs of a serious medical condition requiring prompt medical evaluation.

93. Plaintiffs further allege that one or more John Doe Defendants failed to take objectively reasonable measures to assess Jason Jones's condition, provide appropriate monitoring, obtain timely medical treatment, summon emergency medical assistance without unreasonable delay, or otherwise respond reasonably to Jason Jones's serious medical condition.

94. Upon information and belief, one or more John Doe Defendants received reports concerning Jason Jones's condition, including information allegedly provided by another detainee, but failed to respond appropriately under the circumstances.

95. Plaintiffs allege that these acts and omissions deprived Jason Jones of rights secured by the Fourteenth Amendment.

96. As a direct and proximate result of these alleged constitutional violations, Jason Jones suffered injury and ultimately died while in Defendants' custody.

97. Plaintiffs seek all relief authorized under 42 U.S.C. § 1983.

## XIII. SECOND CLAIM FOR RELIEF

**Municipal Liability (Monell)**

**(Against the City and County of Denver)**

98. Plaintiffs incorporate by reference all preceding paragraphs.

99. At all relevant times, the City and County of Denver was responsible for operating the Denver Detention Center through the Denver Sheriff Department.

100. Upon information and belief, one or more policies, customs, practices, failures to train, failures to supervise, failures to implement constitutionally adequate emergency medical procedures, staffing deficiencies, or institutional deficiencies contributed to the constitutional violations alleged in this Complaint.

101. Plaintiffs further allege that many facts concerning those policies, customs, supervisory decisions, staffing levels, emergency response procedures, and training remain exclusively within Defendants' possession and are expected to be developed through discovery.

102. Plaintiffs allege that discovery may reveal deficiencies concerning detainee medical care, welfare checks, communication between correctional staff and medical personnel, staffing, supervision, emergency response procedures, or other institutional practices.

103. Plaintiffs further allege that any policy, custom, practice, or institutional deficiency ultimately

proven through discovery was a moving force behind the constitutional violations alleged herein.

104. Plaintiffs seek all damages and relief authorized by law against the City and County of Denver.

## XIV. JOHN DOE DEFENDANTS

105. Plaintiffs incorporate by reference all preceding paragraphs.

106. Plaintiffs presently do not know the identities of all correctional officers, deputies, supervisors, medical personnel, emergency responders, or other employees who personally participated in the events giving rise to this action.

107. Those individuals are designated as John Does 1 through 10.

108. Plaintiffs allege that each John Doe Defendant personally participated in, directed, approved, failed to prevent, or otherwise contributed to the constitutional violations alleged in this Complaint.

109. Plaintiffs expect discovery to identify those individuals through surveillance recordings, incident reports, staffing records, medical records, communications, and witness testimony.

110. Plaintiffs will promptly seek leave of Court to substitute the true names of the John Doe Defendants after their identities become known.

## XV. INJURIES AND DAMAGES

111. Plaintiffs incorporate by reference all preceding paragraphs.

112. As a direct and proximate result of the acts and omissions alleged herein, Jason Jones suffered injury and died while in Defendants' custody.

113. Plaintiffs allege that Jason Jones was deprived of timely medical evaluation, monitoring, treatment,

and emergency intervention while dependent upon Defendants for his care.

114. Plaintiffs further allege that Plaintiffs have suffered damages recoverable under applicable federal and Colorado law arising from Jason Jones's death.

115. Plaintiffs further allege that they have incurred expenses and other losses associated with Jason Jones's death, including funeral and burial expenses, to the extent recoverable by law.

116. Plaintiffs seek compensatory damages in an amount to be determined by the evidence presented at trial.

117. Plaintiffs further seek all damages, costs, interest, and other relief authorized by law.

## XVI. PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs respectfully request that this Court:**

A. Enter judgment in favor of Plaintiffs and against Defendants.

B. Declare that Defendants violated Jason Jones's rights under the Fourteenth Amendment to the United States Constitution.

C. Award compensatory damages in an amount determined by the evidence presented at trial.

D. Award recoverable costs of this action.

E. Award pre-judgment and post-judgment interest as permitted by law.

F. Award reasonable attorney's fees under 42 U.S.C. § 1988 if recoverable under applicable law.

G. Grant Plaintiffs leave to amend this Complaint, substitute the proper party, or take any other action

necessary if the Court determines that additional procedural steps are required concerning representative capacity, standing, or any other pleading issue.

H. Grant such other and further legal or equitable relief as the Court deems just and proper.

## XVII. JURY DEMAND AND VERIFICATION

**Jury Demand**

**118. Plaintiffs demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.**

**Verification**

I declare under penalty of perjury under the laws of the United States of America that I have read the foregoing First Amended Complaint and that the factual allegations contained therein are true and correct to the best of my personal knowledge, information, and belief.

I further declare that allegations made upon information and belief are based upon information presently available to Plaintiffs because many relevant facts remain exclusively within Defendants' possession, custody, or control and are expected to become known through discovery.

Plaintiffs respectfully reserve the right to amend this Complaint, substitute parties, or supplement the allegations as permitted by the Federal Rules of Civil Procedure and any Order of the Court.

Respectfully submitted,

Dezhon Sandoval

Plaintiff, Pro Se


Chantal Jones

Plaintiff, Pro Se


Jessamyn Jones

Plaintiff, Pro Se


Date: 7/15/26